Crowder v. Dick & Co.

GREEN CROWDER, Admr. of J. B. Crowder, deceased, *vs.* N. & J. DICK & Co.

A guaranty, like every other written contract, only takes effect from the time of its execution, and cannot have an effect before its existence. *Held,* therefore, that the guaranty could not have influenced the party (N. & J. D. & Co.) in giving credit on the draft.

The guaranty or obligation sued on was signed by J. B. C. in blank, for the purpose of renewing a debt then existing against the maker; that is, so much as was covered by the guaranty, not to create a new obligation. *Held,* that the evidence negatives any promise for more.

It was error in N. & J. D. & Co. to blend the accounts of the several parties.

Every man is bound to correct his own errors, and he is not permitted to make them the basis of a contract.

The last guaranty or obligation given by defendant below, only covers so much of his liability as accrued under the first obligation, or guaranty, and the testimony shows, that the $10,000 draft could not be considered as part of that guaranty.

IN error from the circuit court of Carroll county; Hon. F. M. Rogers, judge.

This case was decided upon a different principle at a former term of this court, and is reported in 10 S. & M. 71, where an additional statement of facts may be found.

The judgment of the court below is founded upon a guaranty executed by J. B. Crowder, for the debt of R. B. Crowder, to N. & J. Dick & Co. for $8,803.03, dated 5th of April, 1841, and is intended to include a balance due N. & J. Dick & Co., due from R. B. Crowder.

*S. Caldwell and Acee,* for plaintiffs in error.

*George Yerger and F. Anderson,* for defendants in error.

*W. R. Miles,* on the same side.

A petition was filed in this case for a re-argument, but it was refused by the court.

Mr. Justice FISHER delivered the opinion of the court.

This case was before this court at its January term, 1848. 10 S. & M. 71.   The same evidence appears in the present record as appeared on that occasion to sustain the claim of the plaintiffs.   So far, then, as they are concerned, we need merely refer to the opinion of the court then delivered, for a statement of the facts, and the principles of law applicable thereto.  If no opposing evidence appeared on the part of the defendant, the plaintiffs' right to recover would be too clear to admit of doubt. Admitting, then, that they have established their claim, the question arises for consideration, what evidence has been offered by the defendant to defeat it?

The plaintiffs insist that the joint draft of R. D. & J. J. Crowder was accepted and paid on the faith of the guaranty of J. B. Crowder, bearing date the 26th of February, 1836.   The guaranty undertakes to protect the plaintiffs to the amount of $20,000, on drafts which they may accept, to be thereafter drawn by R. D. Crowder.   The joint draft for $10,000 was decided by the court, on the former occasion, not to be within the specific terms of the guaranty, and, therefore, not protected by it.

But the court said, that "the draft of $10,000 was obviously accepted on the faith of the first guaranty," &c.   Is this fact true?   To answer this question, we will first state the evidence of the plaintiffs, and then show how it is met by the defendant.

The plaintiffs, on their part, exhibit the guaranty, bearing date the 26th of February, 1836; one day before the $10,000 draft was drawn.   In the absence of other proof, the law presumes that an instrument was executed on the day of its date.

Crowder *v.* Dick & Co.

The guaranty then would be held to have been executed on the day it bears date; and being anterior in date, the law would presume that the draft was accepted on the faith of it. From this it will be seen, that the plaintiffs established one fact, the date of the guaranty, and then insist upon two legal presumptions arising therefrom; that it was executed on the day of its date, and, being prior to the draft, influenced the plaintiffs to give credit to the Messrs. Crowders.

We will now present the defendant's evidence on this point. It shows that the draft was drawn by the Messrs. Crowders on the 27th of February, 1836; that it was upon the plaintiffs' indorsement, discounted the same day, and the money, after deducting discounts, paid on their check to the drawers. This fixes the exact time the plaintiffs became liable on the draft. The other proof, in substance, shows that the guaranty, not then executed, was placed in the mail at Nashville on the 29th of the month, in a letter addressed to J. B. Crowder, at Pittsburg, now Granada, Miss.; and that at least five days must have elapsed from the time it was mailed before he could have received it.

The point in controversy was the time this instrument was executed. The plaintiffs were content to rely on the legal presumption arising from the date. This kind of evidence the law allows for the sake of convenience. The defendant, on the contrary, relied on facts, for the purpose of rebutting the presumption, and showing the very truth of the transaction. This kind of evidence the law favors, on account of its greater certainty. The fact, then, is not true, as assumed, that the draft was obviously accepted on the faith of the guaranty. The fact evidently appeared to the court on the former trial, that the guaranty was executed before the draft was drawn, as will be seen from the following language used in the opinion: " after the first guaranty was given, R. D. Crowder, jointly with J. J. Crowder, drew upon N. & J. Dick & Co. for $10,000," &c. Here the court says, after the guaranty was given the draft was drawn. The fact now is the reverse; the draft was first drawn, and the guaranty, according to our view of the whole evidence, given to cover other drafts.

A guaranty, like every other written contract, only takes effect from the time of its execution. "It cannot have an effect before its own existence," in the language of one of the eminent counsel whose reasons are given for uniting in the petition for a re-argument; and, therefore, could not have influenced the plaintiffs in giving credit on the draft.

This point really decides the whole case, as the express promise by J. B. Crowder to pay the draft, would not bind him without a consideration. But we will briefly notice the other point, and the testimony of both parties.

The plaintiffs insist that J. B. Crowder made an express promise to pay this draft. The evidence shows that they did not accept on the faith of the guaranty; and there is, therefore, no consideration arising from that source to support a promise. But is it true, that there was an express promise made? The plaintiffs prove that, on the 18th of May, 1839, J. B. Crowder gave them a note for $16,095.98, in which was included the balance due on the $10,000 draft. This evidence certainly establishes a promise. But how is it met by the defendant? He shows that the note was signed in blank, or, in other words, that J. B. Crowder sent to said firm two blank notes, to renew his own and his brother, R. D. Crowder's balances, on the books of said house; that the accounts of J. B., R. D., J. J., and Green Crowder, were all blended and included in said note. No proof appears in the record, that J. B. Crowder was then informed as to the state of accounts between the house and R. D. Crowder. The receipt given on the occasion says that the two blank notes were received to renew balances, &c.

The question arises, Did this proof authorize the balance due on the $10,000 draft to be included in the note which was intended to renew the balance on the books against R. D. Crowder? The money paid on the joint draft of R. D. & J. J. Crowder was not an item in the separate account of the former. It was an item for the joint account, and could not be anticipated as one of the charges in the separate account. But it is manifest that no new liability was intended to be assumed. The note was not intended to create a new liability. It was to renew a debt then existing; that is, a debt against the maker of the

Crowder *v.* Dick · & Co.

note, or, in other words, so much of R. D. Crowder's account as was covered by the guaranty. To have assumed more than this, would not have been renewing a debt, but creating one. Renewing is not creating a debt, but only a continuation of one already existing. This was all that was intended by the note, to renew the liability then existing. The evidence, therefore, negatives every presumption, which otherwise might have existed to support the express promise.

The remaining point arises out of the plaintiffs' second instruction, and the following language from the opinion of the court : "This guaranty (second guaranty) having also been given in consequence of an agreement to separate the amount of R. D. Crowder's account from the amount of J. B. Crowder's account, (note is what is intended,) was so much a payment of the note of $16,099.98." The evidence shows very clearly, as we have seen, that this note was not obligatory, at least for any part of the $10,000. Separating the account, therefore, from it, was only releasing the maker from an apparent, and not an actual liability. It was only cancelling to that extent an invalid obligation.

But the defendant's proof fully explains the transaction, and shows that the firm only did what was clearly a matter of duty. It has already been stated, that two blank notes were sent to renew the balances against R. D. & J. B. Crowder. The very object of sending two notes was to keep the accounts of the parties separate. The accounts of the four Crowders were all included in one note; the two latter without a shadow of authority, and R. D. Crowder's in violation of instructions. When J. B. Crowder visited the plaintiffs in 1841, to make a settlement, learning the manner in which the note was filled up by the house, he made certain objections, and requested the accounts to be made out separately. Upon this state of facts the account of R. D. Crowder was taken from the said note. It was clearly an error on the part of the plaintiffs, to blend the accounts of the several parties. Every man is bound to correct his error gratuitously when prejudicial to another, and the law will not allow him to make it the basis of a contract. To hold otherwise would only encourage men to commit errors that they might be rewarded for doing justice to the injured party.

Many other points are made by counsel, but they are not important to the merits of the cause.   The first point, as intimated, decides the only important question, the consideration for the second guaranty.   Our opinion is, that it only covers such liability as accrued under the first guaranty; and that, under the testimony, the $10,000 draft cannot be considered part of that liability.

We say nothing as to the instructions given to the jury. They were certainly applicable to the plaintiffs' evidence, and as certainly inapplicable when applied to the whole evidence. The law applies itself to all the evidence in a cause, and in this way decides the rights of the parties.   It may be true, we do not however so decide, that the judge should give an instruction asked by one party, if applicable to his evidence, though wholly inapplicable when considered in reference to the whole evidence in the cause.   It may also be true, that the judge should only instruct, under the statute, when the parties disagree, or when he shall be requested to give an instruction.   We will not undertake to decide these questions at this time, or to construe the statute; but it is very certain that there has been no change made in one rule, that the law must be administered, whether it is the province of the court or of the jury to decide it.

We think that the verdict in this case should have been set aside, and a new trial granted.   This the court below refused; for which the judgment will be reversed, and new trial granted.

YERGER, judge, having been of counsel, took no part in the decision of this case.